# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN ALEXANDER WOODARD,<br><br>Plaintiff,<br><br>v.<br><br>DR. WANG,<br><br>Defendant. | Case No. 1:16-cv-01089-SAB (PC)<br><br>ORDER REGARDING PLAINTIFF'S REQUEST FOR A PRELIMINARY AND PERMANENT INJUNCTION<br><br>[ECF No. 19] |

Plaintiff Adrian Alexander Woodard is a state prisoner appearing pro se in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.**

**INTRODUCTION**

Plaintiff is in the custody of the California Department of Corrections and Rehabilitation ("CDCR") and is housed at California State Prison, Corcoran ("CSP-COR"). This action proceeds on Plaintiff's first amended complaint against Defendant Wang in his individual capacity for deliberate indifference to a serious medical need in violation of the Eighth Amendment. (ECF No. 21.)

Currently before the Court is Plaintiff's request for a preliminary and permanent injunction, as stated in his first amended complaint. (ECF No. 19.) On December 22, 2017, Defendant Wang filed a response to the request. (ECF No. 25). The time for a reply has passed, and no reply has been filed. The motion is deemed submitted without oral argument. Local Rule 230(l).

## II.

## DISCUSSION

### A. Motion for Preliminary and Permanent Injunction

Plaintiff alleges that on September 11, 2015, he fell down the stairs and twisted his right ankle. Plaintiff attempted to walk, but simultaneously fell. On September 12, 2015, he was examined by Defendant Wang, who offered Plaintiff pain mediation, and ordered him returned to his housing cell. Eventually, Plaintiff was diagnosed with a comminuted fracture of the distal fibula.

According to Plaintiff, the physician who diagnosed him stated that because of the time it took for him to visit a hospital, the swelling had become so bad that the bone could not be set. Plaintiff was nevertheless admitted and received a cast for his ankle. In his first amended complaint, Plaintiff seeks a preliminary and permanent injunction ordering Defendant Wang to send Plaintiff to an off-side doctor to perform surgery on Plaintiff's right ankle, and to give him physical therapy until recovery.

Defendant opposes Plaintiffs' request, asserting that Plaintiff was seen by an orthopedic specialist at Mercy Hospital Bakersfield who recommended "closed treatment" (non-surgical) for Plaintiff's injury by immobilizing the joint in a plaster cast. Defendant asserts that Plaintiff's medical records show he received this recommended treatment, and received recommended follow-up care.

### B. Excerpts of Plaintiff's Medical Records

In support of Defendants' opposition to Plaintiff's motion, Defendant attached excerpts from Plaintiff's medical records, with a declaration from a custodian of records to authenticate them. (ECF No. 25, at pp. 8-29.) Plaintiff did not contest the authenticity of these records or otherwise challenge the representations made in the records. Some of these records were also attached as exhibits to Plaintiff's first amended complaint. (See ECF No. 21, at pp. 12-17, 33-43.)

The records show that Plaintiff injured his right ankle on the evening of Friday, September 11, 2015. (ECF No. 25, at p. 10.) Plaintiff was evaluated by medical staff and

discharged in a wheelchair in stable condition. (*Id*.) Progress notes from the next day indicate swelling and an assessment of an ankle sprain, and a recommendation for an x-ray by Defendant Wang on Monday. (*Id*. at 12.)

Follow-up notes from September 14, 2015 indicate that the x-ray was done Monday morning, and the following findings were made: "There is a comminuted fracture of the distal fibula extending above and below the tibial plafond. Fracture is mildly separated. There is equivocal widening of the medial tibiotalar interval which may be due to ligamentous injury. The subtalar joint is within normal limits." (*Id*. at 14.)

On September 15, 2015, Dr. Wang ordered Plaintiff to be transferred out for further evaluation, and Plaintiff was transported by "Code 2" ambulance to the emergency room at Mercy Hospital Bakersfield. (*Id*. at 18.) At Mercy, Plaintiff was examined, immediately given Norco for pain, and sent for more x-rays, which showed a distal comminuted fibular facture. (*Id*. at 20-21.) Specifically, the x-ray findings were a "Nondisplaced spiral fracture of the distal fibular metaphysis." (*Id*. at 23.)

Plaintiff was admitted the same day, and the admitting physician, Mushtaq Ahmed, MD, noted the plan was "[t]o get an Ortho consultation, may need cast, may not be surgical." (ECF No. 25, at pp. 25-26.) Dr. Ahmed further noted that he was "[a]waiting for Dr. Paik for evaluation. May need a cast and possibly in my opinion, nonoperable. If that is the case, then we will have repeat eval, nonbearing weight and some possible discharge to facility." (*Id*. at 28.)

Later, on September 15 or 16, 2015, Plaintiff was examined by orthopedic specialist Young Paik, MD. (*Id.* at 32-33.) Dr. Paik's impression was that Plaintiff had a "minimally displaced fracture, lateral malleolus" and a "partial tear of the deltoid ligament of the right ankle." (*Id*. at 32.) He recommended "closed treatment, immobilize with short leg cast, nonweightbearing about 2 weeks followed by partial weightbearing after repeat x-ray for further evaluation. If cast too loose, may change the cast." (*Id*.) Dr. Paik further found that Plaintiff was able to be transferred to the facility, and should have a follow-up within two weeks. (*Id.*)

Plaintiff was discharged from Mercy Hospital Bakersfield on September 16, 2015 with his ankle immobilized in a short cast, and he was given a prescription for Norco for pain. (ECF

3

1  No. 25, at p. 35.) A few days later, on September 19, 2015, Plaintiff slipped and fell in the
2  shower, and his leg cast got wet. (*Id*. at 39.)  Plaintiff was returned to the emergency room at
3  Mercy Hospital Bakersfield, where his cast was removed and replaced. (*Id.* at 40.) Plaintiff's
4  ankle also was X-rayed again, with results of "[n]o significant change in the oblique minimally
5  displaced distal fibular fracture." (*Id*. at 43.)

6  On September 22, 2015 Plaintiff was examined at the institutonal hospital by Edgar
7  Clark, MD, who found Plaintiff's cast to be in good shape, and wrote a request for services for
8  Plaintiff to see Dr. Paik by two weeks. (ECF No. 25, at p. 45.) On September 30, 2015,
9  Plaintiff's  right ankle was s-rayed again and found to be without significant change. (*Id*. at 48.)

10  Plaintiff had an orthopedic appointment with Dr. Paik or on about October 5, 2015, at
11  which time Plaintiff's plaster cast was removed and replaced with a fiberglass cast. (*Id.* at 50.)
12  Plaintiff was directed to return for follow-up in three weeks. (*Id*.)

13  Plaintiff saw Dr. Paik again on November 2, 2015. (*Id.* at 52.) Dr. Paik took at X-ray of
14  Plaintiff's ankle, finding that it showed "the alignment is acceptable. The fracture line is still
15  visualized of the laterial malleolus of the ankle. Well-maintained ankle mortise." (*Id*.) Dr. Paik
16  also found that Plaintiff required a walker boot, but was unable to be provided with one at the
17  time, so he would use a short-leg waking cast, with weightbearing as long as tolerated. (*Id*.)
18  Plaintiff was directed to return again in three weeks to have the cast removed and an x-ray. (*Id*.)

19  Plaintiff's ankle was x-rayed again on December 16, 2015. (ECF No. 25, at p. 54.) The
20  referring physician noted that the casting material had been removed, and "a[] subacute facture
21  of the distal fibula is present without evidence of union." (*Id*.)

22  On December 18, 2015, Plaintiff had a telemedicine consult with Dr. Paik. (ECF No. 25,
23  at p. 56.) Plaintiff was referred to physical therapy for his right ankle, and a follow-up in one
24  month.

25  Defense counsel asserts that they are awaiting receipt of further medical records
26  regarding Plaintiff's treatment after December 18, 2015.
27  ///
28  ///

C.  **Legal Standards**

The purpose of a preliminary injunction is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. Univ. of Texas v. Camenisch, 451 U.S. 390, 395 (1981). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." Winter v. Natural Resources Defense Council, Inc., 555 U.S. 7, 20 (2008) (citations omitted). An injunction may only be awarded upon a clear showing that the plaintiff is entitled to relief. Id. at 22 (citation omitted).

In cases brought by prisoners involving conditions of confinement, any preliminary injunction must be narrowly drawn, extend no further than necessary to correct the harm the Court finds requires preliminary relief, and be the least intrusive means necessary to correct the harm. 18 U.S.C. § 3626(a)(2). The pendency of this action does not give the Court jurisdiction over prison officials in general. Summers v. Earth Island Institute, 555 U.S. 488, 491–93, 129 S. Ct. 1142, 173 L. Ed. 2d 1 (2009); Mayfield v. United States, 599 F.3d 964, 969 (9th Cir. 2010). The Court's jurisdiction is limited to the parties in this action and to the viable legal claims upon which this action is proceeding. Summers, 555 U.S. at 491–93; Mayfield, 599 F.3d at 969.

The standard for a permanent injunction is essentially the same as for a preliminary injunction, with the exception that the plaintiff must show actual success, rather than a likelihood of success. See Amoco Prod. Co. v. Village of Gambell, 480 U.S. 531, 546 n.12, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987).

D.  **Analysis**

Based on the limited facts available in the record at this juncture, Plaintiff has not made a clear showing that he is entitled to the issuance of a preliminary or permanent injunction requiring that he be provided surgery. The limited medical records show that Plaintiff has been recommended non-surgical treatments, such as casts, pain medications, and a gradual increase in weight-bearing on the injury. There is no evidence that a surgical treatment was recommended

5

by any of the medical staff treating Plaintiff, and it appears he was receiving regular care for his injury. Plaintiff has not made a clear showing that he is receiving a level of medical care that would violate constitutional standards and that he is therefore entitled to preliminary injunctive relief. McSorley v. N. Nevada Corr. Ctr., 225 Fed.Appx. 448, 449 (9th Cir. 2007). The limited facts available and Plaintiff's layman's opinion that he requires surgery are not sufficient for the Court to intercede in his medical care.

Plaintiff has also not shown any likelihood that he will suffer irreparable harm in the absence of injunctive relief here, that the balance of equities tips in his favor, or that an injunction is in the public interest. The medical notes available appear to show that Plaintiff's doctors found his level of hearing to be acceptable at the time. There is no evidence of the current status of Plaintiff's ankle, and, as discussed above, no evidence that he is in immediate need of surgery. In sum, there is a lack of evidence of any immediate threat of harm to Plaintiff that would require prompt and immediate injunctive relief.

### III.
### CONCLUSION

For the reasons explained above, it is HEREBY ORDERED that Plaintiff's request for a preliminary and permanent injunction (ECF No. 19) is DENIED.

IT IS SO ORDERED.

Dated: **January 22, 2018**

UNITED STATES MAGISTRATE JUDGE