# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ADRIAN ALEXANDER WOODWARD,<br><br>        Plaintiff,<br><br>    v.<br><br>DR. WANG,<br><br>        Defendant. | Case No. 1:16-cv-01089-SAB (PC)<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF JUDGMENT FOR DEFENDANT WANG<br><br>(ECF Nos. 35, 40, 41) |

Adrian Alexander Woodward ("Plaintiff") is appearing pro se and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983. Currently before the Court is Plaintiff's motion for partial summary judgment and Dr. Wang's ("Defendant) motion for summary judgment.[1]

## I.

## PROCEDURAL HISTORY

Plaintiff filed the complaint in this action on July 28, 2016. (ECF No.1.) Plaintiff consented to the jurisdiction of the magistrate judge on January 25, 2017. (ECF No. 6.) Plaintiff's complaint was screened; and on March 21, 2017, Plaintiff was ordered to file an

---

[1] Defendant provided Plaintiff with notice of the requirements for opposing a motion for summary judgment with the motion for summary judgment. Woods v. Carey, 684 F.3d 934, 939 (9th Cir. 2012); Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988).

1

amended complaint or notify the Court that he was willing to proceed on the claims found to be cognizable in the complaint. (ECF No. 7.) On April 5, 2017, Plaintiff filed a notice that he wished to proceed on the cognizable claims and service of the complaint was ordered. (ECF Nos. 9, 11.) On June 30, 2017, Defendant Wang consented to the jurisdiction of the magistrate judge. (ECF No. 12.)

Defendant Wang filed an answer on July 18, 2017. (ECF No. 14.) A discovery and scheduling order was filed on July 19, 2017. (ECF No. 15.) Plaintiff filed a reply to the answer that was stricken from the record on August 31, 2017. (ECF Nos. 17, 18.) On November 30, 2017, Plaintiff filed a motion for leave to file an amended complaint. (ECF No. 19.) Plaintiff's amended complaint was screened and the motion for leave to file an amended complaint was granted. (ECF No. 21.) The amended complaint was filed on November 30, 2017. (ECF No. 21.)

On December 15, 2017, Defendant filed a motion for rescreening of the amended complaint. (ECF No. 22.) The request for rescreening of the amended complaint was denied on December 19, 2017, and Defendant was ordered to file an answer to the amended complaint and request for a preliminary injunction. (ECF No. 23.) Defendant filed an answer to the amended complaint and a response to the request for injunctive relief on December 22, 2017. (ECF Nos. 24, 25.) On January 22, 2018, Plaintiff's request for a preliminary and permanent injunction was denied. (ECF No. 26.)

On February 20, 2018, Plaintiff filed a motion to vacate the denial of his request for injunctive relief, a motion for entry of default judgment, and a motion for partial summary judgment. (ECF No. 27.) On February 21, 2018, Defendant responded to Plaintiff's motion to vacate the denial of his request for injunctive relief stating that Plaintiff may not have been served with the response to the request for injunctive relief. (ECF No. 28.) On February 23, 2018, Plaintiff's motion to vacate the denial of his request for injunctive relief and default judgment was denied. (ECF No. 29.) Plaintiff was provided with the opportunity to file a motion for reconsideration of the order denying his request for injunctive relief within thirty days. (Id.)

| | |
|---|---|
| 1 | Defendant filed a motion for an extension of time to file a response to Plaintiff's motion |
| 2 | for summary judgment which was granted on March 8, 2018. (ECF Nos. 30, 32.) On March 26, |
| 3 | 2018, Plaintiff filed a reply to Defendant's answer which was stricken from the record. (ECF |
| 4 | Nos. 33, 34.) |
| 5 | Defendant filed a motion for summary judgment and opposition to Plaintiff's motion for |
| 6 | partial summary judgment on May 8, 2018. (ECF No. 35.) Plaintiff filed a request for an |
| 7 | extension of time to file an opposition which was granted on June 6, 2018. (ECF Nos. 36, 37.) |
| 8 | Plaintiff filed a second request for an extension of time to file an opposition which was granted |
| 9 | on July 9, 2018. (ECF Nos. 38, 39.) Plaintiff filed his opposition on July 16, 2018. (ECF No. |
| 10 | 40.) Defendant filed a reply on July 24, 2018. (ECF No. 41.) |

## II.

## ALLEGATIONS IN FIRST AMENDED COMPLAINT

Plaintiff is in the custody of the California Department and Corrections and, at the time of the incidents alleged in the complaint, was housed at Corcoran State Prison ("CSP"). (First Am. Compl. ("FAC") 1, ECF No. 21.) Defendant Wang is employed as a medical care provider at CSP. (Id.)

On September 11, 2015, at approximately 8:00 p.m., Plaintiff fell down the stairs and twisted his right ankle. (Id. at 2.) Plaintiff was escorted in a wheelchair to the medical center where he was seen by Nurse Serna. (Id.) A few hours later, Plaintiff was escorted by wheelchair to the institutional hospital where he explained his ankle injury to Nurse Crawford and other unidentified medical staff. (Id.) Plaintiff was provided with mere Ibuprofen for pain and sent back to his cell. (Id.)

On September 12, 2015, Plaintiff returned to the institutional hospital complaining of severe pain in his ankle. (Id.) Plaintiff explained to Dr. Wang that he had fallen down the stairs while carrying a box of his property and that his ankle hurt and he could not sleep. (Id. at 2-3.) Dr. Wang told Plaintiff that there was nothing that he could do for Plaintiff other than to provide him with pain medication. (Id. at 3.) Plaintiff complained that the medication he was receiving was not working and that he was unable to sleep due to ankle pain. (Id.) Defendant told

3

Plaintiff, "grown man [sic] handle pain." (Id.) Plaintiff was returned to his cell. (Id.)

On September 13, 2015, Plaintiff returned to the institutional hospital and was seen by Nurse Spurling. (Id.) Plaintiff complained about the ankle pain and requested treatment for his swollen ankle. (Id.) Plaintiff requested that he be sent to the hospital since he had not slept in over two days and the Ibuprofen was not relieving his pain. (Id.) Nurse Spurling told Plaintiff that he had already been seen by the doctor and there was nothing more that she could do for him. (Id.) Plaintiff was returned to his housing unit. (Id.)

On September 14, 2015, Plaintiff saw Dr. Wang after having received an x-ray and was transferred to Mercy Hospital in Bakersfield. (Id.) Upon arrival at the hospital, Plaintiff informed Dr. Ahmed that the injury had occurred on September 11, 2015,[2] and Dr. Ahmed wondered why it had taken so long to send Plaintiff because the swelling was so bad that they would be unable to do anything. (Id. at 3-4.) Plaintiff was seen by Dr. Shultz who indicated that he had "a comminuted fracture of the distal fibula." (Id. at 3.)

Plaintiff was admitted to the hospital and received treatment for the swelling. (Id. at 4.) During the following days, Plaintiff's ankle was casted. (Id.)

This action is proceeding against Defendant Wang in his individual capacity for deliberate indifference in violation of the Eighth Amendment. (ECF No. 20.)

## III.

## LEGAL STANDARDS

### A. Summary Judgment

Any party may move for summary judgment, and the court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case. . .." Celotex Corp. v. Catrett, 477 U.S. 317,

---

[2] Plaintiff's complaint states September 11, 2016, but this appears to be a typographical error.

322 (1986). "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp., 477 U.S. at 322.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

**B.     Deliberate Indifference**

The Eighth Amendment's prohibition against cruel and unusual punishment protects convicted prisoners. Bell v. Wolfish, 441 U.S. 520, 535 (1979); Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). Although prison conditions may be restrictive and harsh, prison officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation,

medical care, and personal safety. Johnson v. Lewis, 217 F.3d 726, 731 (9th Cir. 2000) (quotation marks and citations omitted).

While the Eighth Amendment entitles an inmate to medical care, it is violated only when a prison official acts with deliberate indifference to an inmate's serious medical needs. Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). To prevail on a claim that a prison official has provided constitutionally deficient medical care, the inmate "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).

Deliberate indifference is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference." Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096). The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care. Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.

A difference of opinion between a physician and the prisoner - or between medical professionals - concerning what medical care is appropriate does not amount to deliberate indifference. Snow, 681 F.3d at 987, Wilhelm, 680 F.3d at 1122-23 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

## IV.

## DISCUSSION

### A.  Undisputed Facts

The Court has reviewed the undisputed facts set forth in both Plaintiff's and Defendant's

motion for summary judgment. The undisputed facts set forth are those that the Court finds to be genuinely undisputed.

1. Plaintiff injured his right ankle on Friday, September 11, 2015. (FAC 2; Decl. in Supp. of Pl.'s Mot. for Partial Summ. J ("Plaintiff's Decl.") ¶ 3, ECF No. 27 at 9-11; Def. Dr. Wang's Decl. Supp. Mot. for Summ. J./Opp. Pl.'s Mot. ("Wang Decl.") ¶ 4, ECF No. 35-4.)

2. Plaintiff was brought to the Triage & Treatment Area ("TTA") in a wheelchair at 10:35 p.m. (FAC 2; Wang Decl. ¶ 4.)

3. Plaintiff complained of ankle pain from a fall that occurred at approximately 8:00 p.m. (FAC 2; Plaintiff's Decl. ¶ 3; Wang Decl. ¶ 4.)

4. The prison's x-ray machine was not available because there was no x-ray technician to operate it on a Friday night. (Wang Decl. ¶ 4.)

5. Plaintiff was discharged from the TTA in stable condition at 11:00 p.m. (FAC 2; Wang Decl. ¶ 4; Exhibit 3, ECF No. 35-3 at 21.)

6. Defendant examined Plaintiff on Saturday, September 12, 2015, in the TTA. (FAC 2; Plaintiff's Decl. ¶ 4; Wang Decl. 5; Exhibit 4, ECF No. 35-3 at 23.)

7. Defendant noted swelling and tenderness, but no open wound, in Plaintiff's right ankle, malleolar area. (Wang Decl. 5, Exhibit 4.)

8. Defendant's initial assessment was that Plaintiff might have suffered a right ankle sprain. (Wang Decl. 5, Exhibit 4.)

9. Defendant was unable to make a definitive diagnosis of Plaintiff's injury without an x-ray of the ankle. (Wang Decl. ¶ 5.)

10. The prison x-ray machine was not available over the weekend as there was no radiology technician on site to operate it. (Wang Decl. ¶ 5.)

11. Defendant ordered that Plaintiff be taken for an x-ray on Monday morning. (Wang Decl. 5; Exhibit 5, ECF No. 35-3 at 25.)

12. Defendant prescribed Tylenol and Ibuprofen to be taken together for pain. (FAC 3; Wang Decl. 5, Exhibits 4 and 5.)

13. Defendant determined that Plaintiff's condition was stable and he did not need

1 immediate transport for medical care. (Wang Decl. ¶ 5.)

2     14.    Plaintiff did not have a broken bone protruding from the skin nor was there any visual deformity. (Id.)

4     15.    Registered Nurse Spurling saw Plaintiff at the TTA at 10:35 p.m. on September 13, 2015. (FAC 3, Plaintiff's Decl. ¶ 5; Wang Decl. ¶ 7; Exhibit 6, ECF No. 35-3 at 27.)

6     16.    Registered Nurse Spurling noted that Plaintiff had difficulty ambulating with minimal swelling of the right ankle. There was no deformity or broken skin. (Wang Decl. ¶ 7, Exhibit 6.)

9     17.    Plaintiff's ankle was x-rayed at 11:38 a.m. on Monday, September 14, 2015. The x-ray showed a comminuted fracture of the distal fibula. (FAC 3-4; Wang Decl. ¶ 8; Exhibit 7, ECF No. 35-3 at 29.)

12     18.    Defendant examined Plaintiff and diagnosed him with a distal fibular fracture of the right ankle that was non-displaced. (Wang Decl. ¶ 8; Exhibit 8, ECF No. 35-3 at 31-32.)

14     19.    Defendant ordered Plaintiff to be transferred to Mercy Hospital by ambulance, Code 2. (FAC 3; Plaintiff's Decl. ¶ 6; Wang Decl. ¶ 8; Exhibits 8 and 9.)

16     20.    Plaintiff was admitted to Mercy Hospital on September 14, 2015, and received a second x-ray which confirmed a non-displaced comminuted fibular fracture. (FAC 4; Plaintiff's Decl. ¶¶ 6, 7; Wang Decl. ¶ 9; Exhibit 11, ECF No. 35-3 at 38-39; Exhibit 12, ECF No. 35-3 at 41.)

20     21.    Plaintiff was examined by Dr. Ahmed who noted that the plan was to get an orthopedic consultation, that Plaintiff may need a cast, and that it may not be surgical. (Wang Decl. ¶ 9, Exhibit 13, ECF No. 35-3 at 43.)

23     22.    Dr. Ahmed saw Plaintiff on Tuesday, September 15, 2015. He noted that they were awaiting an orthopedic evaluation, but in his opinion, Plaintiff needed a cast and the fracture was non-operable. If that were so then they would reevaluate for nonbearing weight and possible discharge to the facility. (Wang Decl. ¶ 10; Exhibit 14, ECF No. 35-3 at 46.)

27     23.    Plaintiff had a physical therapy evaluation and a thirty-minute physical therapy session that same day. Plaintiff required crutch training for safety due to irregular behavior.

1  (Wang Decl. ¶ 11, Exhibit 15, ECF No. 35-3 at 48.)

2  24.     Plaintiff had a second physical therapy session later in the afternoon. The
3  therapist noted that Plaintiff was ambulating independently and no further sessions were needed.
4  (Wang Decl. ¶ 11; Exhibit 15.)

5  25.     Plaintiff had another x-ray of his ankle that found "1. Fracture of the distal right
6  fibula at the level of the ankle mortise. 2. Mild widening of the medial clear space concerning
7  for ligamentous injury." (Wang Decl. ¶ 12, Exhibit 16, ECF No. 35-3 at 51.)

8  26.     On Wednesday, September 16, 2015, orthopedic surgeon Young Paik, M.D.
9  evaluated Plaintiff. Dr. Paik recommended closed treatment and that the ankle be immobilized
10 with a short leg cast. (Wang Decl. ¶ 13, Exhibits 17 and 18, ECF No. 35-3 at 53, 55.)

11 27.     On Wednesday, September 16, 2015, Plaintiff was discharged to the facility to be
12 non-weight bearing for two weeks. (Wang Decl. ¶ 14; Exhibit 19, ECF No. 35-3 at 58.)

**B.     Defendant's Objection to Plaintiff's Evidence**

In support of his motion for summary judgment, Plaintiff presents materials that have been copied from various medical sources. Defendant objects to the evidence on the grounds of inadmissible hearsay, lack of authentication, relevancy, and that they cannot be considered as a substitute for proper medical testimony from a qualified expert.

In support of his motion, Plaintiff attaches the following evidence that is subject to Defendant's objection.

1.   A document discussing treatment of various fractures which appears to be from a website for "AAOS." (ECF No. 40 at 30-38.)

2.   A document discussing ankle fractures from OrthoInfo. (Id. at 39-41.)

3.   An article published in the Open Access Journal of Sports Medicine entitled Optimal Management of Ankle Syndesmosis Injuries. (Id. at 42-55.)

4.   An article published in the Indian Journal of Orthopaedics entitled Understanding Risks and Complications in the Management of Ankle Fractures. (Id. at 56-69.)

Rule 56 requires that, before evidence can be considered on summary judgment, a proper foundation must be laid. Bias v. Moynihan, 508 F.3d 1212, 1224 (9th Cir. 2007). Federal Rule

of Evidence 901(a) requires "authentication or identification as a condition precedent to admissibility." A foundation must be laid "by evidence sufficient to support a finding that the matter in question is what its proponent claims" before evidence may be admitted. Fed. R. Evid. 901(a). "[D]ocuments which have not had a proper foundation laid to authenticate them cannot support a motion for summary judgment." Beyene v. Coleman Sec. Services, Inc., 854 F.2d 1179, 1182 (9th Cir. 1988) (quoting Canada v. Blain's Helicopters, Inc., 831 F.2d 920, 925 (9th Cir. 1987). A foundation is laid by testimony of a witness though whom the document could be admitted into evidence. Bias, 508 F.3d at 1224. Plaintiff has not laid any foundation for the documents and the documents themselves do not contain any indicia from which the Court could conclude that they are true and correct copies of what they purport to be.

Here, Plaintiff seeks to admit as evidence in support of his motion for summary judgment and in opposition to Defendant's motion for summary judgment professional journal articles addressing ankle fractures. To lay a foundation, Plaintiff is required to place a document in evidence by the testimony of a witness who has personal knowledge of the facts and can attest to the identity and due execution of the document and, where appropriate, its delivery. Beyene, 854 F.2d at 1182. Plaintiff has not laid a proper foundation for the documents in this matter. Defendant's objection on the ground of lack of authentication is sustained.

Further, the statements within these articles are hearsay. Hearsay is a statement that the declarant did not make while testifying in the current trial or hearing and is presented to prove the truth of the matter asserted in the statement. Fed. R. Evid. 801(c). Hearsay is not admissible unless a federal statute or rule provides otherwise. Fed. R. Evid. 802.

Plaintiff seeks to offer the statements contained in the articles for their truth. The content of the publications is inadmissible hearsay. Larez v. City of Los Angeles, 946 F.2d 630, 642 (9th Cir. 1991). Plaintiff has not set forth an exception to the hearsay rule that would apply. Defendant's objection on the ground of hearsay is sustained. As Defendant's objections on the grounds of lack of authentication and hearsay have been sustained, the Court declines to address the additional grounds raised by Defendant. The documents shall not be considered in deciding the current motions.

### C. Plaintiff's Motion for Partial Summary Judgment

Plaintiff moves for partial summary judgment stating that he is seeking partial summary judgment on his claims of denial of serious medical needs, but is not moving for summary judgment on his medical care claims because there are material factual disputes concerning them. (ECF No. 27 at 9.) Plaintiff alleges that on September 12, 13 and 14, 2015, Defendant Wang denied him medical care in violation of the Eighth Amendment.

Defendant counters that Plaintiff's medical claims are interpreted to be medical negligence claims, but that no state law negligence claims were alleged in the complaint. (ECF No. 35-2 at 15.) Further, Defendant argues that Plaintiff has not demonstrated that there was a violation of his constitutional rights.

Plaintiff replies that where a doctor suspects an ankle fracture, he should have been immediately sent to the emergency room for treatment. Plaintiff also argues he suffered from severe pain and swelling for four days before being sent for proper medical treatment.

In this action, Plaintiff is proceeding only on claims of deliberate indifference to a serious medical need, there are no other pending claims. The Court shall consider Plaintiff's motion for summary judgment on the deliberate indifference claim. Plaintiff alleges that Defendant Wang was deliberately indifferent by failing to immediately have him transferred to the emergency room to receive proper care for his ankle.

To prevail on his claim alleging inadequate medical care in violation of the Eighth Amendment, Plaintiff must demonstrate deliberate indifference to his serious medical needs. Colwell v. Bannister, 763 F.3d 1060, 1066 (9th Cir. 2014). Deliberate indifference contains "both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference." Colwell, 763 F.3d at 1066 (quoting Snow, 681 F.3d at 985.)

Plaintiff must first objectively show that he was deprived of something sufficiently serious. Lemire v. California Dept. of Corr. & Rehab., 726 F.3d 1062, 1074 (9th Cir. 2013). To meet the objective standard, Plaintiff must show that he has a serious medical need. Colwell, 763 F.3d at 1066. Defendant does not dispute that Plaintiff had a serious medical need. In fact,

the record demonstrates that Plaintiff had a spiral fracture of his ankle that required casting. (Undisputed Fact ("U.F.") 17, 18, 20, 21, 25, 26.) Plaintiff has demonstrated that he had a serious medical need.

Next, Plaintiff must make a subjective showing that prison officials knew of and disregarded a substantial risk of harm. Lemire, 726 F.3d at 1074. "This 'requires more than ordinary lack of due care.'" Colwell, 763 F.3d at 1066 (quoting Farmer v. Brennan, 511 U.S. 825, 835 (1994) and Whitley v. Albers, 475 U.S. 312, 319 (1986)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Finally, Plaintiff must demonstrate that Defendant Wang's actions were an actual and proximate cause of his injuries. Lemire, 726 F.3d at 1074.

Plaintiff contends that he should have immediately been transferred to the emergency room to receive treatment for his ankle and that Defendant Wang's failure to do so was deliberately indifferent. Defendant Wang counters that the undisputed facts show that Defendant thought that Plaintiff might have had a sprained ankle and no emergency indications of a fracture were present because there was no deformation of the bone nor were broken ends of bone detectable. Plaintiff replies that a reasonable physician, upon seeing swelling in his ankle, would have immediately sent Plaintiff to the hospital for x-rays.

Deliberate indifference may be manifested "when prison officials deny, delay or intentionally interfere with medical treatment," or in the manner "in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), overruled on other grounds, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). However, a delay in treatment would not rise to the level of deliberate indifference unless the delay causes substantial harm. Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002); Wood v. Housewright, 900 F.2d 1332, 1335 (9th Cir. 1990); Shapley v. Nevada Board of State Prison Commissioners, 766 F.2d 404, 407 (9th Cir. 1984).

Although Plaintiff alleges that he should have immediately been sent to the emergency room due to the swelling in his ankle, he has presented no medical evidence to support this

assertion. Defendant, who is Board certified in Internal Medicine, has presented testimony that generally speaking, a fracture only needs to be treated as an emergency where the bones either protrude out of the skin or are visibly displaced. (Wang Decl. ¶ 5.) It is undisputed that Plaintiff did not have bones protruding out of the skin or visibly displaced but had a nondisplaced spiral fracture. (ECF No. 35-3 at 41.)

When Plaintiff was seen on September 11, 2015, it is noted that he had pain and minimal swelling of his ankle. (ECF No. 35-3 at 21.) Plaintiff was given only Ibuprofen for pain. (FAC 2; Plaintiff's Statement of Undisputed Facts 1, ECF No. 27 at 12-14.)

Defendant saw Plaintiff on September 12, 2015, and he noted swelling to the right ankle but no open wound and diagnosed Plaintiff with a sprained ankle. (ECF No. 35-3 at 23.) Because a radiology technician was not available, Defendant ordered that Plaintiff receive an x-ray of his ankle on Monday, September 14, 2015. (Id. at 25.) Plaintiff complained that the medication was not addressing his pain, and Defendant prescribed Tylenol and Ibuprofen to be taken together for pain. (U.F. 12.)

On September 13, 2015, Registered Nurse Sparlin saw Plaintiff for his complaints of pain and noted that Plaintiff had minimal swelling to his right ankle with no deformity or broken skin. (Id. at 27.) Plaintiff was told to keep his ankle elevated to reduce the swelling. (Id.)

Although Plaintiff states that he had excessive swelling of his ankle, he has presented no evidence that his ankle injury required emergency treatment. Further, while Plaintiff contends that Defendant Wang did nothing to address his severe ankle injury and pain, the undisputed evidence shows that Defendant Wang ordered an x-ray to be taken on Monday, the first time that a radiology technician would be available, and added a second pain medication to address Plaintiff's complaints that the Ibuprofen was not relieving his pain.

To the extent that Defendant misdiagnosed the injury to Plaintiff's ankle, "[m]ere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000); see also Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (mere indifference, negligence, or medical malpractice is not sufficient to find deliberate indifference). "Medical

1  malpractice does not become a constitutional violation merely because the victim is a prisoner."
2  Estelle v. Gamble, 429 U.S. 97, 106 (1976)); Snow, 681 F.3d at 987-88; Wilhelm, 680 F.3d at
3  1122 ("The deliberate indifference doctrine is limited in scope.").

While Plaintiff contends that Defendant knew that his ankle was fractured on September 12, 2015, Defendant has presented evidence that he was unaware that Plaintiff's ankle was broken until the ankle was x-rayed on September 14, 2015, and it was revealed that he had a comminuted fracture of the distal fibula that was mildly separated. (Wang Decl. ¶ 5; ECF No. 35-3 at 29; see also ECF No. 27 at 31 (nondisplaced spiral fracture of the distal fibular metaphysis).) Plaintiff has presented no evidence that Defendant was aware that his ankle was fractured prior to receiving the x-ray results. Furthermore, once the x-ray results were received, Defendant ordered Plaintiff to be transported by ambulance to the hospital for treatment and Plaintiff was transported that same day. (U.F. 17, 18, 19, 20.)

Plaintiff has failed to meet his burden of proof to show that Defendant was deliberately indifferent to his medical condition. Plaintiff's motion for summary judgment is denied.

### D.    Defendant's Motion for Summary Judgment

Defendant moves for summary judgment on the grounds that there is no evidence to support Plaintiff's claim that Defendant was deliberately indifferent to Plaintiff's medical needs and that he is entitled to qualified immunity. Defendant contends that the undisputed facts show that Plaintiff was not denied medical services in disregard of his constitutional rights. Defendant argues that 1) Plaintiff was injured on Friday night, when the x-ray machine was unavailable and he received an x-ray on Monday morning after which he was transferred to an outside hospital for evaluation and casting; 2) even if Dr. Wang told Plaintiff "grown men handle pain" the remark would not implicate Plaintiff's constitutional rights; 3) Defendant has qualified immunity for Plaintiff's claims; and 4) Plaintiff cannot establish a causal link between the medical care he received and his alleged damages due to the lack of an expert declaration.

Plaintiff counters that Defendant knew that his ankle was fractured on September 12, 2015; and should have immediately sent him to the hospital for treatment. Plaintiff contends that he suffered four days of pain and swelling to his right ankle before being sent to the hospital for

1 proper medical treatment. Plaintiff contends Defendant is not entitled to qualified immunity 2 because a reasonable physician in Defendant's position would have immediately sent Plaintiff to 3 the hospital for x-rays upon becoming aware of Plaintiff's swelling ankle injury.

4 Defendant replies that, while Plaintiff may not have been satisfied with the medical care 5 that he received, as a matter of law, that is insufficient to rise a cognizable claim under section 6 1983.

7 Qualified immunity is "immunity from suit rather than a mere defense to liability; and 8 like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." 9 Mueller v. Auker, 576 F.3d 979, 993 (9th Cir. 2009) (citation and internal quotations omitted). 10 Qualified immunity shields government officials from civil damages unless their conduct 11 violates "clearly established statutory or constitutional rights of which a reasonable person would 12 have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). "Qualified immunity balances 13 two important interests - the need to hold public officials accountable when they exercise power 14 irresponsibly and the need to shield officials from harassment, distraction, and liability when 15 they perform their duties reasonably," Pearson v. Callahan, 555 U.S. 223, 231 (2009), and it 16 protects "all but the plainly incompetent or those who knowingly violate the law," Malley v. 17 Briggs, 475 U.S. 335, 341 (1986).

18 In resolving the claim of qualified immunity, the Court must determine whether, taken in 19 the light most favorable to Plaintiff, Defendant's conduct violated a constitutional right, and if 20 so, whether the right was clearly established. Saucier v. Katz, 533 U.S. 194, 201 (2001); 21 Mueller, 576 F.3d at 993. While often beneficial to address in that order, the Court has 22 discretion to address the two-step inquiry in the order it deems most suitable under the 23 circumstances. Pearson, 555 U.S. at 236 (overruling holding in Saucier that the two-step inquiry 24 must be conducted in that order, and the second step is reached only if the court first finds a 25 constitutional violation); Mueller, 576 F.3d at 993-94. Here, the Court finds it appropriate to 26 first consider whether there is sufficient evidence to find that Defendant Wang was deliberately 27 indifferent to Plaintiff's serious medical need.

28 / / /

Defendant Wang argues that he was not deliberately indifferent to Plaintiff's ankle injury. The undisputed evidence demonstrates that Defendant saw Plaintiff twice during the weekend that he injured his ankle.

Plaintiff injured his ankle on Friday evening and Defendant Wang saw Plaintiff on the day following his injury. (U.F. 1, 6.) At this first visit, Plaintiff complained that he was having ankle pain and swelling due to having fallen the prior night. (U.F. 6; Plaintiff's Decl. ¶ 5, ECF No. 40 at 6.) Plaintiff told Defendant that he had fallen down the stairs while carrying a box of his property and complained that his ankle hurt like hell and he was unable to sleep. (Plaintiff's Decl. ¶ 5.) Plaintiff also told Defendant that the medication he was receiving, Ibuprofen, was not working. (Id. at ¶¶ 4, 5.) Defendant told Plaintiff that there was nothing that he could do other than to prescribe pain medication and that "grown men handle pain." (Plaintiff's Decl. at ¶ 5.) Defendant Wang prescribed Ibuprofen and Tylenol for pain, and ordered an x-ray to be taken on Monday when a radiology technician was available. (U.F. 10, 11, 12.) Plaintiff was ordered to leave the exam room and returned to his housing unit. (Plaintiff's Decl. ¶ 5.)

Defendant saw Plaintiff on Monday after the x-ray had been obtained. (U.F. 17, 18.) Plaintiff was diagnosed with a non-displaced fracture of the right ankle. (U.F. 18.) Defendant ordered Plaintiff to be transferred to the hospital, and Plaintiff was transferred and admitted to Mercy Hospital that same day. (U.F. 19, 20.)

Defendant has met his burden of informing the district court of the basis for his motion, and identifying those portions of the record which he believes demonstrates the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 322. Therefore, the burden shifts to Plaintiff to establish that a genuine issue as to any material fact actually does exist.[3] Matsushita

---

[3] Plaintiff sets forth a statement of disputed factual issues that he contends preclude summary judgment in this matter. (ECF No. 40 at 9-10.) However, only genuine issues of material fact will create a disputed issue to preclude summary judgment. Plaintiff's disputed factual issues are either not disputed or are not material. For example, Plaintiff states that a disputed fact is whether Plaintiff told Defendant that he fell down the stairs while carrying his property. It is undisputed that Plaintiff injured his right ankle in a fall and the cause of the injury, even if disputed, would not be material. (U.F. 1, 3.) Plaintiff also alleges that a disputed fact exists as to whether he was ordered to leave the examination room and was returned to his housing unit without further medical attention, but it is undisputed that Plaintiff was prescribed pain medication and ordered to have an x-ray on Monday morning when an radiology technician would be available. (U.F. 12, 17.) Plaintiff states that it is disputed whether he was admitted to the hospital and received treatment for the swelling and received a cast. But these facts are not disputed. (U.F. 20, 21, 22, 26.) Further, Plaintiff contends that a disputed fact exists as to whether he informed other prison staff that he

16

Elec. Indus. Co., 475 U.S. at 586.

Plaintiff argues that Defendant knew that his ankle was fractured on September 12, 2015, but he has submitted no evidence in support. Defendant Wang has submitted evidence that while there was swelling and pain, Plaintiff had no open wound or ankle deformity. (U.F. 7, 14, 16.) While it eventually was determined that Plaintiff had a nondisplaced spiral fracture of his ankle, there were no obvious signs that Plaintiff's ankle was fractured, rather than just sprained as Defendant assessed. (U.F. 8.) While Plaintiff contends that no reasonable doctor would have failed to send him to the emergency room for an x-ray, Defendant presents evidence that a fracture only needs to be treated as an emergency where the bones either protrude out of the skin or are visibly displaced. (Wang Decl. ¶ 5.) Plaintiff has not shown that Defendant was aware that his ankle was fractured at the time of the September 12, 2015 visit nor has he presented evidence that the medical standard of care for his ankle injury would require immediate transfer to the hospital.

Plaintiff also argues that Defendant did not provide treatment for his ankle leaving him to suffer from pain and swelling.[4] When he injured his ankle on September 11, 2015, Plaintiff was only provided Ibuprofen for pain and was sent back to his housing unit. (FAC 6.) When Plaintiff saw Defendant the following day, he complained that the Ibuprofen did not provide him with relief from pain, and Defendant prescribed Tylenol to be taken with the Ibuprofen for pain. (U.F. 12.) Defendant also ordered that an x-ray be taken on Monday once the radiology technician was back on duty. (U.F. 11.) Although Plaintiff states that Defendant told him that "grown men handle pain," this is not sufficient to demonstrate deliberate indifference. Defendant prescribed additional pain medication and ordered that an x-ray be completed as soon as the x-ray technician was back on duty. Although Plaintiff wanted to be sent to the emergency

---

wanted to be sent to the hospital because he had not slept in several days and his pain medication was not working. But this action is proceeding only against Defendant Wang and what Plaintiff told other staff members is insufficient to create a factual dispute absent evidence that Defendant Wang was aware of the statements. Plaintiff also argues that it is disputed whether Defendant acted with deliberate indifference, but legal conclusions do not create a factual dispute to preclude summary judgment. The Court finds that Plaintiff's disputed facts are either not disputed or are not genuine issues of material fact to preclude summary judgment.

[4] The Court notes that Plaintiff injured his ankle at around 8:00 p.m. on Friday, September 11, 2015. (FAC ¶ 6; Plaintiff's Decl. ¶ 4.) Plaintiff was transported to Mercy Hospital and admitted on September 14, 2015, three days later. (U.F. 20; ECF No. 35-3 at 38-39.)

room for x-rays, his disagreement with the treatment provided is insufficient to create a triable issue of fact.

Plaintiff also argues that medical staff refused to provide him with other treatment due to Defendant's orders which superseded their authority. However, although Plaintiff was seen by Nurse Sparling on September 13, 2015, complaining that the medication he had been prescribed was not relieving his pain, Plaintiff has presented no evidence that Defendant was aware that the medication he had prescribed the previous day was not working. The evidence in the record demonstrates that the next time that Defendant saw Plaintiff was on September 14, 2015, after Plaintiff had obtained an x-ray of his ankle. (U.F. 18.) Defendant ordered that Plaintiff be casted and directed him to be transferred to Mercy Hospital. (U.F. 19.)

Further, Plaintiff has not shown that any other treatment would have been appropriate. After Plaintiff was transferred by ambulance to Mercy Hospital, he was admitted and remained in the hospital until he was evaluated by an orthopedic surgeon. (U.F. 20, 26, 27.) Upon examination at the hospital, Dr. Ahmed noted that Plaintiff needed a cast but that he did not believe that Plaintiff's ankle injury would require surgery. (U.F. 21, 22.) On September 16, 2015, Plaintiff was evaluated by an orthopedic surgeon, Dr. Paik, who recommended closed treatment and that Plaintiff's ankle be immobilized in a short cast. (U.F. 26.)

Defendant has presented evidence that he prescribed pain medication and ordered an x-ray for Plaintiff on the first visit following his ankle injury. After Plaintiff had received the x-ray showing a fracture of his ankle, Defendant ordered for Plaintiff to be transported to the emergency room, and Plaintiff was transported that same day.[5] The Court finds that Plaintiff has failed to meet his burden to demonstrate that genuine issues of material fact exist.

The undisputed facts demonstrate that there is insufficient evidence for a reasonable trier of fact to find that Defendant Wang was deliberately indifferent to Plaintiff's ankle injury. Defendant Wang prescribed pain medication, and ordered an x-ray of Plaintiff's ankle on the next available date. Once the x-ray revealed a spiral fracture of the ankle, Defendant had

---

[5] As Defendant has prevailed on the first step of the qualified immunity analysis, the Court need not address Defendant's arguments regarding whether the right is clearly established.

Plaintiff transferred to the hospital for further treatment. There is no evidence that Defendant Wang intentionally delayed treating Plaintiff or that the treatment he provided was below the medical standard of care. Accordingly, Defendant Wang is entitled to summary judgment.

## V.
## ORDER

Based on the foregoing, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment is DENIED;
2. Defendant's motion for summary judgment is GRANTED; and
3. The Clerk of the Court is DIRECTED to enter judgment in favor of Defendant Wang.

IT IS SO ORDERED.

Dated: **January 23, 2019**

UNITED STATES MAGISTRATE JUDGE